IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| FRANKLIN VALDEZ, et al., | ) | Civ. No. 09-00296 ACK-BMK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FLEXPOINT FUNDING CORP. | ) | |
| (IRVINE), et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT RMS'S MOTION FOR JUDGMENT ON THE
PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**PROCEDURAL BACKGROUND**

On June 29, 2009, plaintiffs Franklin Valdez and

Lynette Lou Kawaikauikamakaokaopua Valdez ("Plaintiffs") filed a

complaint ("Complaint") against defendants Flexpoint Funding

Corp. (Irvine) ("Defendant Flexpoint")[1] and RMS Residential

Properties, as owner designee ("Defendant RMS") (collectively,

"Defendants").[2]  The gravamen of this action is that, during the

_____

[1] At the hearing on this motion, Plaintiffs explained that
when they attempted to serve Defendant Flexpoint, Plaintiffs
learned that Flexpoint was out of business and were unable to
obtain a forwarding address.  See 7/12/10 Tr. 4:18-22 (rough
draft of transcript) ("Tr.").  As a result, Defendant Flexpoint
has not been served in this matter.  Id.

[2] The Complaint was accompanied by a letter dated May 26,
2009 written by Plaintiffs addressed to Defendant Flexpoint,
"writing to [Defendant Flexpoint] to officially complain about
the accounting and servicing of my mortgage loan . . ." and
"requesting that [Flexpoint] work with me to negotiate a loan
modification that my client will be able to pay."  As discussed
(continued...)

execution of a certain note and mortgage, Defendant Flexpoint allegedly failed to provide Plaintiffs certain mortgage loan documents as required under various federal lending laws.  This action is brought against Defendant RMS as a potential assignee, and also to the extent Defendant RMS was involved in enforcing the terms of the mortgage.  See Compl. ¶ 18.[3]

On September 23, 2009, Defendant RMS filed an answer to the Complaint ("Defendant RMS's Answer").  Defendant RMS's Answer was accompanied by a crossclaim against Defendant Flexpoint for contribution and indemnification ("Defendant RMS's Crossclaim").

On March 3, 2010, Defendant RMS filed a motion for joinder of parties Dana Capital Realty, Inc. ("Defendant Dana

_____

[2](...continued)
infra, the letter did not request rescission of the note and mortgage.

[3] Specifically, the Complaint states:

> Upon information and belief Defendant RMS is purportedly a servicer on the loan and purportedly received an assignment of the Mortgage and Note from Defendant Flexpoint but has not produced said assignment, therefore absent such proof, Defendant RMS has no authority to take the subject property via non judicial foreclosure.  If, however, Defendant RMS did in fact secure a proper assignment, then Defendant RMS stands in the shoes of Defendant Flexpoint as assignee and any allegations contained in this Complaint against Defendant Flexpoint equally apply against Defendant RMS and are hereby incorporated by reference in their entirety.

Compl. ¶ 18.

Capital") and Fidelity National Title & Escrow of Hawaii, Inc. ("Defendant Fidelity") as defendants ("Defendant RMS's Motion for Joinder of Parties"). See Docket no. 15.  In its Motion for Joinder of Parties, Defendant RMS asserted that joinder was appropriate because "[t]he crux of Plaintiffs' Complaint filed June 29, 2009, is that the Plaintiffs are entitled to damages from the original lender [Defendant Flexpoint] because the Plaintiffs failed to receive certain mortgage loan documents that are required under certain federal lending laws."  Defendant RMS's Motion for Joinder of Parties at 6.  Defendant RMS proceeded to explain that Defendant Dana Capital appears to have been the mortgage broker involved in processing the loan application, and that Defendant Fidelity appears to have been the escrow company involved in closing the loan.  Id. at 6-7.

On April 7, 2010, Magistrate Judge Barry M. Kurren held a hearing on Defendant RMS's Motion for Joinder of Parties.  See Docket no. 18.  At the hearing, Judge Kurren orally granted Defendant RMS's Motion for Joinder of Parties.  Id. Subsequently, Judge Kurren issued a written order to this effect.[4/]

---

[4/] At the hearing on April 7, 2010, Judge Kurren instructed Defendant RMS's counsel to prepare a written order, but no such order was filed prior to the hearing on this motion.  Following the hearing on this motion, after the Court inquired as to the status of that order, the written order signed by Judge Kurren was entered on July 23, 2010.  See Docket no. 34.  On July 26, (continued...)

On April 19, 2010, Defendant RMS filed a motion for
judgment on the pleadings, or in the alternative for summary
judgment ("Defendant RMS's Motion").  Defendant RMS's Motion was
accompanied by a memorandum in support ("Defendant RMS's Motion
Mem.").  Although Defendant RMS's Motion was not accompanied by a
concise statement of material facts as required by D. Haw. Local
Rule 56.1, the motion was accompanied by Defendant RMS's exhibits
in support of summary judgment.  Subsequently, on June 25, 2010,
after Plaintiffs filed their opposition to Defendant RMS's
Motion, Defendant RMS filed a separate concise statement of facts
("Defendant RMS's CSF").[5]

On June 24, 2010, Plaintiffs filed an opposition to

---

[4]/(...continued)
2010, Judge Kurren entered a minute order directing Plaintiffs to
file any third-party complaints against the newly joined parties
no later than August 9, 2010.  See Docket no. 35.  For the
reasons discussed infra, Plaintiffs need not file a third-party
complaint against the newly joined Defendants because the Court
grants summary judgment in favor of all Defendants in this
matter, and directs the Clerk of the Court to close this case.

[5] Although the concise statement of facts should have been
filed concurrent with Defendant RMS's Motion pursuant to D. Haw.
Local Rule 56.1(a), the Court shall consider Defendant RMS's
concise statement of facts as Plaintiffs did not object to the
untimely filing, and Defendant RMS's exhibits were filed
concurrent with the Motion.  In addition, because Defendant RMS
filed its concise statement of facts after Plaintiffs filed their
opposition, the Court extended the deadline for Plaintiffs to
file their concise statement of facts in response to Defendant
RMS's CSF to July 8, 2010, which eliminated any prejudice to
Plaintiffs caused by the late filing.  See Docket no. 27.

Defendant RMS's Motion ("Pls' Opp'n").[6/]  Plaintiffs' filing was not accompanied by a concise statement of facts as required by D. Haw. Local Rule 56.1(b), but was accompanied by two exhibits. These exhibits were: (1) a forensic audit report prepared by National Loan Auditors concerning the subject mortgage note and loan documents ("Loan Audit Report"), and (2) a letter which appears to be dated May 20, 2009, addressed to Defendant RMS in which Plaintiffs request rescission of the Note and Mortgage, and state their reasons for requesting rescission.[7/]  Plaintiffs

---

[6/] Pursuant to D. Haw. Local Rule 7.4, the opposition was due not less than 21 days prior to the date of the hearing, which was June 21, 2010.  On account of Plaintiffs' late filing, the Court extended the deadline for Defendant RMS's reply to July 1, 2010.  Accordingly, because Defendant RMS was not prejudiced by Plaintiffs' late filing, the Court accepts Plaintiffs' untimely opposition.

[7/] The letter addressed to Defendant RMS is highly suspect. At the outset, it should be noted that Defendant RMS has submitted a declaration stating that it did not receive this letter, and the letter that was allegedly sent to Defendant RMS was presented by Plaintiffs to the Court for the first time in opposition to Defendant RMS's instant motion.  The letter addressed to Defendant Flexpoint, however, was included with the Complaint, even though it was dated later than the alleged letter to Defendant RMS.  That is, although Plaintiffs assert that they brought the alleged disclosure violations to the attention of Defendant RMS only after they learned that Defendant Flexpoint went out of business, the dates on the letters contradict this assertion.  See Pls' Supp. Br. at 9-10.
    At the end of the letter addressed to Defendant RMS, for the first time, the words "We request rescission of the mortgage," are included in the letter.  The text in this sentence, however, is darker than the rest of the text, appears to be in a different font, and is not in a straight line.  More strikingly, this sentence is not included in the letter addressed to Defendant Flexpoint.  In their supplemental briefing, Plaintiffs assert
                                                              (continued...)

opposition was also accompanied by a declaration from Plaintiffs'
counsel, Keoni K. Agard ("Agard Decl.").

On July 1, 2010, Defendant RMS filed a reply in support
of its Motion ("Reply").

---

[7]/(...continued)
that the phrase "was added to place a specific request to
Defendant RMS that was not initially contemplated."  Pls' Supp.
Br. at 9.  This explanation is not persuasive, however, as the
letter addressed to Defendant RMS was dated earlier than the
letter to Defendant Flexpoint.  Moreover, except for the
questionable sentence added to the letter addressed to Defendant
RMS ("We request rescission of the mortgage"), the letter to
Defendant RMS is identical in wording to the letter to Defendant
Flexpoint, even to the point of stating "I am requesting that
FlexPoint Funding Corp (Irvine) work with me to negotiate a loan
modification that my client will be able to pay."
   Although at the hearing Plaintiffs suggested that the letter
to Defendant RMS was actually dated May 26, 2009, Tr. 9:22-10:23,
in both their opposition and their supplemental brief, Plaintiffs
state that the letter to Defendant RMS was dated and sent on May
20, 2009, Pls' Opp'n at 2; Pls' Supp. Br. at 9.  The Court can
only speculate as to the date of the letter to RMS because the
date on this letter appears to have been modified.  The date "May
2 , 2009," is typed in normally, but it appears that the second
digit was erased or whitened out, and the number zero was
handwritten in as the second digit.  Thus, the date appears as
May 20, 2009.  The letter addressed to Defendant Flexpoint,
however, was dated May 26, 2009, and does not appear to have been
modified.  If the letter to Defendant RMS was indeed sent on May
20, 2009, Plaintiffs could not have later decided to insert the
sentence "We request rescission of the mortgage," because it was
sent before the letter addressed to Defendant Flexpoint.  Even if
the letter to Defendant RMS had been sent on May 26, 2009, it
would have been sent on the same day as the letter to Defendant
Flexpoint, and thus there would not have been time for Plaintiffs
to reconsider or review the letter to Defendant Flexpoint, and
later add the sentence requesting rescission of the Note and
Mortgage in the letter addressed to Defendant RMS.  Indeed, this
Court is troubled as it appears that the last page of the letter
to Defendant RMS (including the signatures of Plaintiffs) was a
xerox copy of the last page of the letter to Defendant Flexpoint,
with the addition of the sentence stating "We request rescission
of the mortgage" having been typed in.

Subsequently, on July 8, 2010, with leave of Court
Plaintiffs filed a separate concise statement of facts in
opposition to Defendant RMS's Motion ("Pls' CSF").

The Court held a hearing on Defendant RMS's Motion on
July 12, 2010.  At the hearing, the Court requested supplemental
briefing on the following issues:

> (1) whether a non-judicial foreclosure sale has
> preclusive effect for purposes of res judicata
> under Hawaii law;
> (2) Plaintiffs' allegation that Defendant RMS
> transferred the subject note and mortgage and/or
> property to the Bank of Scotland sometime after
> the ejectment proceedings were initiated and, if
> so, how this is relevant since the mortgage was
> foreclosed upon by Defendant RMS in October of
> 2008;
> (3) whether Defendant RMS may be held liable under
> Hawaii's Unfair and Deceptive Practices Act
> ("UDAP") as an assignee, and, if not, whether
> Plaintiffs are withdrawing their UDAP claim
> against Defendant RMS;
> (4) why the letter addressed from Plaintiffs to
> Defendant RMS, which is included as Exhibit B to
> Plaintiffs' opposition, differs from the letter
> addressed from Plaintiffs to Defendant Flexpoint,
> which is attached to the Complaint, and whether
> Defendant RMS received this letter;
> (5) following Plaintiffs' submission of an
> affidavit from the author of the Loan Audit Report
> which swears or verifies that the Loan Audit
> Report is true and correct, whether the Loan Audit
> Report, which is included as Exhibit A to
> Plaintiffs' opposition, is admissible; [and]
> (6) whether Defendant Flexpoint is a national
> bank. . . .

See Docket no. 30.

On July 20, 2010, Plaintiffs filed their supplemental
memorandum addressing these issues ("Pls' Supp. Br.").  On the

same day, Defendant RMS filed its supplemental memorandum addressing these issues ("Defendant RMS's Supp. Br.").

## FACTUAL BACKGROUND[8]

On March 16, 2007, Plaintiffs executed an adjustable rate note ("Note") in the amount of $238,000.00 in favor of Defendant Flexpoint. Defendant RMS's Motion, Ex. A at 3; Defendant RMS's Crossclaim ¶ 2.[9] On the same day, Plaintiffs executed a mortgage ("Mortgage") in favor of Mortgage Electronic Registration System, Inc., solely as nominee for Defendant Flexpoint to secure repayment of the Note. Defendant RMS's CSF ¶ 1; Defendant RMS's Crossclaim ¶ 4. The Mortgage encumbered real property located at 166 Puhili Street, Hilo, HI 96720 (Tax Map Key No. 2-5-049-047) ("Property"). See Defendant RMS's CSF ¶ 3; Compl. ¶ 5.

According to Plaintiffs, they did not receive various required disclosures in connection with the execution of this Note and Mortgage. Specifically, in their Complaint Plaintiffs contend that they did not receive various documents required by the federal Truth in Lending Act, including notice of their three-day right to rescind the transaction. Compl. ¶¶ 26, 30,

---

[8] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

[9] This appears to be a refinance loan. See Defendant RMS's Motion, Ex. A at 16.

34.  In opposition to Defendant RMS's Motion, Plaintiffs have identified several other disclosures that they allegedly did not receive, or which were improperly executed.  These disclosures include the: (1) Initial Adjustable Rate Mortgage (ARM) Disclosure (only unsigned copies in file), (2) Good Faith Estimate (not in file), (3) Initial Application (not in file), (4) final signed HUD-1 Settlement Statement (not in file), (5) Initial Transfer of Servicing Disclosure (not in file), (6) Equal Credit Opportunity Act Statement (not in file), (7) Right to Copy of Appraisal Disclosure (not in file), (8) Privacy Policy Notice (not in file), and (9) Fair and Accurate Credit Transactions Act (FACTA) Disclosures, which includes Notice to Home Loan Applicant and Credit Score Disclosures (not in file).  <u>See</u> Agard Decl. ¶¶ 4-5.[10/]

The Note and Mortgage were subsequently assigned to Residential Mortgage Solution LLC[11/] by virtue of an assignment of

---

[10/] In Plaintiffs' CSF, with the exception of one legal argument asserted by Defendant RMS, Plaintiffs admit all of the material facts set forth in Defendant RMS's CSF.  <u>See</u> Plaintiffs' CSF ¶¶ 1-11.  Plaintiffs proceed to allege separate material facts which they claim are relevant or in dispute, but cite exclusively to the Complaint or case law in support of these factual statements.  <u>Id.</u> ¶¶ 12-26.  In fact, Plaintiffs themselves did not submit any declarations in opposition to Defendant RMS's Motion, which would have been useful to establish evidence of Defendants' alleged misrepresentations.

[11/] Residential Mortgage Solution LLC appears to be related to, or a subsidiary of, Defendant RMS, but the parties have not briefed this point as the Note and Mortgage were subsequently

(continued...)

mortgage ("First Assignment") dated December 24, 2007, and recorded in the Bureau of Conveyances of the State of Hawai'i as Document No. 2007-224060.  Defendant RMS's Crossclaim ¶ 5.  The Note and Mortgage were then assigned to Defendant RMS by virtue of an assignment of mortgage ("Second Assignment") dated May 9, 2008, recorded in the Bureau of Conveyances of the State of Hawai'i as Document No. 2008-078431 from Residential Mortgage Solution LLC to Defendant RMS.  Id.

Plaintiffs defaulted on the Note and Mortgage.  Id. at 6; Defendant RMS's Mem. at 5.  As a result, Defendant RMS foreclosed on the Mortgage and conducted a non-judicial foreclosure sale of the Property on October 23, 2008, wherein Defendant RMS was the purchaser of the Property.  Defendant RMS's CSF ¶¶ 3-4; Defendant RMS's Mem. at 5.  The particulars of the non-judicial foreclosure sale were recorded in the Mortgagee's Affidavit of Foreclosure Under Power of Sale ("Foreclosure Affidavit"), recorded in the Bureau of Conveyances of the State of Hawai'i on October 24, 2008, as Document No. 2008-164352 pursuant to Haw. Rev. Stat. ("H.R.S.") § 667-5.  Defendant RMS's CSF ¶¶ 3-4.  A foreclosure quitclaim deed ("Quitclaim Deed") conveying title to Defendant RMS dated October 29, 2008, was recorded in the Bureau of Conveyances of the State of Hawai'i as

---

[11]/(...continued)
assigned to Defendant RMS via the Second Assignment.

Document No. 2009-006490 on January 20, 2009.  Id. ¶ 5.

Plaintiffs remained on the Property, resulting in the commencement of an ejectment action on or about February 25, 2009.  Defendant RMS's Motion Mem. at 6.  In the state court ejectment action, Defendant RMS filed a motion for summary judgment and for writ of ejectment against Plaintiffs on April 24, 2009.  Id.  Plaintiffs failed to timely file an opposition to this motion, but appeared with counsel at the June 2, 2009, hearing and had an opportunity to present arguments before the state court.  Id.

Prior to the entry of the written order granting Defendant RMS's motion for summary judgment and for writ of ejectment, Plaintiffs filed the instant action in federal court on June 29, 2009.  On July 2, 2009, in the state court action Plaintiffs moved to stay the state court ejectment proceedings pending resolution of this action.[12/]  This motion was subsequently withdrawn on July 28, 2009, and judgment was entered and a writ of ejectment was issued on November 12, 2009.  See Defendant's Motion Mem. at 6.  Subsequently, on April 21, 2010, Plaintiffs filed an ex-parte motion for a temporary restraining order, which was denied by the state court on May 17, 2010.  On

---

[12/] The Court has learned the procedural history of the state court ejectment action by reviewing the state court docket of that action, as well as through the supplemental briefing of the parties.

June 16, 2010, Plaintiffs appealed that decision, as well as the underlying order granting summary judgment, the writ of ejectment, and the entry of judgment.  Thus, the state court ejectment action is presently on appeal.

## LEGAL STANDARDS

I.      **Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") states, "[a]fter the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings."  When Rule 12(c) is used to raise the defense of failure to state a claim upon which relief can be granted, the standard governing the Rule 12(c) motion for judgment on the pleadings is the same as that governing a Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") motion.  See McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988); Luzon v. Atlas Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1262 (D. Haw. 2003).  As a result, a motion for judgment on the pleadings for failure to state a claim may be granted "'only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.'"  McGlinchy, 845 F.2d at 810 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).  Thus, "[a] judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." Enron Oil Trading &

Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 528 (9th Cir.

1997) (citing McGann v. Ernst & Young, 102 F.3d 390, 392 (9th

Cir. 1996)).  "Not only must the court accept all material

allegations in the complaint as true, but the complaint must be

construed, and all doubts resolved, in the light most favorable

to the plaintiff." McGlinchy, 845 F.2d at 810.

Under Rule 12(b)(6), review is generally limited to the

contents of the complaint.  Sprewell v. Golden State Warriors,

266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100

F.3d 1476, 1479 (9th Cir. 1996).  Courts may also "consider

certain materials—documents attached to the complaint, documents

incorporated by reference in the complaint, or matters of

judicial notice—without converting the motion to dismiss into a

motion for summary judgment." United States v. Ritchie, 342 F.3d

903, 908 (9th Cir. 2003).  Documents whose contents are alleged

in a complaint and whose authenticity are not questioned by any

party may also be considered in ruling on a Rule 12(b)(6) motion

to dismiss.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir.

1994).

**II.      Motion for Summary Judgment**

The purpose of summary judgment is to identify and

dispose of factually unsupported claims and defenses.  See

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary

judgment is therefore appropriate if the "pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (citation omitted).[13/]  Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Miller, 454 F.3d at 987.  The moving party may do so with affirmative evidence or by "'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.[14/]

---

[13/] Disputes as to immaterial issues of fact do "not preclude summary judgment."  Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

[14/] When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for
(continued...)

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. See id. at 323; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).[15/] The nonmoving party must instead set forth "significant probative evidence" in support of its position. T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.

---

[14/](...continued) summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. Miller, 454 F.3d at 987. When the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party. Id.

[15/] Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

See <u>T.W. Elec. Serv.</u>, 809 F.2d at 630-31.[16/]  Accordingly, if

"reasonable minds could differ as to the import of the evidence,"

summary judgment will be denied.  <u>Anderson</u>, 477 U.S. at 250-51.

## DISCUSSION

As a preliminary matter, the Court observes that in its

reply Defendant RMS repeatedly argues that the Court should grant

summary judgment in favor of Defendant RMS because various counts

of the Complaint do not specifically allege claims against

Defendant RMS, but instead makes claims only against Defendant

Flexpoint.  <u>See</u> Reply at 2-6 (requesting that Counts I-V be

dismissed for failure to allege claims against Defendant RMS).

The Court finds this argument unpersuasive.  In their Complaint,

Plaintiffs specifically state that:

> If . . . Defendant RMS did in fact secure a proper
> assignment [of the Note and Mortgage], then
> Defendant RMS stands in the shoes of Defendant
> Flexpoint as assignee and any and all allegations
> contained in this Complaint against Defendant
> Flexpoint equally apply against Defendant RMS and
> are hereby incorporated by reference in their
> entirety.

Compl. ¶ 18.  Although Plaintiffs make vague allegations that

Defendant RMS did not secure proper assignment of the Note and

Mortgage, Defendant RMS has come forward with evidence that it

was properly assigned the Note and Mortgage.  <u>See</u> Defendant RMS's

---

[16/] At the summary judgment stage, the court may not make
credibility assessments or weigh conflicting evidence.  <u>Anderson</u>,
477 U.S. at 249; <u>Bator v. Hawaii</u>, 39 F.3d 1021, 1026 (9th Cir.
1994).

Motion, Ex. B at 49-52.   Accordingly, Plaintiffs have properly asserted claims against Defendant RMS as an assignee of the Note and Mortgage, and to the extent Defendant RMS engaged in unfair trade practices itself.   See Compl. ¶ 40 (asserting that Defendant RMS engaged in "deceptive acts and practices and unfair methods of competition").

Given that the bulk of Plaintiffs' claims appear to be related to the federal Truth in Lending Act ("TILA"), which is contained in Title I of the Consumer Credit Protection Act, as amended (15 U.S.C. § 1601, et seq.), the Court will begin by addressing these claims.

## I.        TILA Claims

In Counts II through IV of the Complaint, Plaintiffs allege that "Defendant Flexpoint" violated TILA and its implementing regulations by failing to (1) obtain signed loan documents, (2) give Plaintiffs notice of their three-day right to rescind, and (3) give Plaintiffs "conspicuous writings".   See Compl. ¶¶ 25-37.

The purpose of TILA is to assure a meaningful disclosure of credit terms so that consumers can understand more readily various available terms and avoid the uninformed use of credit.   See 15 U.S.C. § 1601(a).   TILA requires the lender to disclose to borrowers specific information, including providing the borrower notice of their right to rescind a transaction.

See, e.g., 15 U.S.C. §§ 1635, 1638.  Regulation Z, 12 C.F.R. Part 226, is issued by the Board of Governors of the Federal Reserve System to implement TILA.  See 12 C.F.R. § 226.1(a).

TILA provides borrowers two remedies for disclosure violations: (1) rescission, 15 U.S.C. § 1635; and (2) damages, 15 U.S.C. § 1640.  Plaintiffs allege both, and the Court will address the merits of each in turn.

**A.    Rescission**

In credit transactions in which a security interest in a consumer's principal dwelling is retained, TILA gives a consumer three days in which to rescind the transaction.  15 U.S.C. § 1635(a).  If a lender fails to disclose to a borrower his or her right to rescind, or fails to provide material disclosures, the duration of the borrower's right to rescind extends for three years from the date the transaction was consummated or upon sale of the property, whichever occurs first. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3); see also Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 703-05 (9th Cir. 1986); Hefferman v. Bitton, 882 F.2d 379, 383-84 (9th Cir. 1989) (noting that a plaintiff must send notice of rescission prior to selling the property).

In its entirety, 15 U.S.C. § 1635(f) provides:

> An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact

18

> that the information and forms required under this
> section or any other disclosures required under
> this part have not been delivered to the obligor,
> except that if (1) any agency empowered to enforce
> the provisions of this subchapter institutes a
> proceeding to enforce the provisions of this
> section within three years after the date of
> consummation of the transaction, (2) such agency
> finds a violation of this section, and (3) the
> obligor's right to rescind is based in whole or in
> part on any matter involved in such proceeding,
> then the obligor's right of rescission shall
> expire three years after the date of consummation
> of the transaction or upon the earlier sale of the
> property, or upon the expiration of one year
> following the conclusion of the proceeding, or any
> judicial review or period for judicial review
> thereof, whichever is later.

15 U.S.C. § 1635(f); see also 12 C.F.R. § 226.23(a)(3) ("[T]he

right to rescind shall expire 3 years after consummation, upon

transfer of all of the consumer's interest in the property, or

upon sale of the property, whichever occurs first.").

Even an involuntary sale of the subject property

terminates a borrower's right to rescind.  According to the

Official Staff Commentary to Regulation Z, "[a] sale or transfer

of the property need not be voluntary to terminate the right to

rescind.  For example, a foreclosure sale would terminate an

unexpired right to rescind."  Official Staff Commentary to Reg.

Z, 12 C.F.R. § 226.23(a)(3).  Indeed, the cases are legion that a

foreclosure sale terminates a borrower's right to rescind under

TILA.  Hallas v. Ameriquest Mortg. Co., 406 F.Supp.2d 1176, 1183

(D. Or. 2005) (foreclosure sale terminated plaintiff's right of

rescission); Fonua v. First Allied Funding, No. 09-0497, 2009 WL

816291 (N.D. Cal. Mar. 27, 2009) (same); Worthy v. World Wide
Fin. Servs., Inc., 347 F.Supp.2d 502, 506 (E.D. Mich. 2004)
(same); Hall v. Fin. Enter. Corp., 188 B.R. 476, 483-84 (D. Mass.
Br. 1995) ("[E]ven if the statute of limitations had not expired,
the [borrower's] claim is barred by the foreclosure sale."). 
Further, the Supreme Court has confirmed that failure to rescind
within the appropriate time frame is an absolute loss of that
right thereafter.  See Beach v. Ocwen Federal Bank, 523 U.S. 410,
417-18 (1998); see also Hawaii Comm. Fed. Credit Union v. Keka,
94 Haw. 213, 223-24, 11 P.3d 1, 11 (2000).

      In this case, a non-judicial foreclosure sale was
conducted on October 23, 2008.  Defendant's CSF ¶ 3.  Plaintiffs
do not dispute that the sale occurred on this date.  Plaintiffs'
CSF ¶ 3.  Plaintiffs assert that they sent a rescission request
to Defendant RMS on May 20, 2009, see Pls' Opp'n, Ex. B, and to
Defendant Flexpoint on May 26, 2009, see Letter addressed to
Defendant Flexpoint attached to Complaint, and therefore were
both sent well after the non-judicial foreclosure sale was
completed.  Accordingly, because Plaintiffs' right to rescind the
Note and Mortgage expired long before Plaintiffs sent rescission
requests or filed the instant Complaint, Plaintiffs' rescission
claim under TILA is untimely.

      B.   **Statutory Damages**

      TILA also permits claims for damages.  15 U.S.C. §

1640(a).  Only creditors, and in some instances assignees, are
subject to civil liability for damages under TILA.  See 15 U.S.C.
§ 1640(a).[17/]  Specifically, assignees may be held liable for
damages if the disclosure violations made by the original lender
are "apparent on the face" of the disclosure documents.  15
U.S.C. § 1641.[18/]

TILA requires that borrowers bring their claims for
damages "within one year from the date of the occurrence of the
violation," unless the claim is asserted "as a matter of defense

_____

[17/] TILA defines a creditor as:

> [A] person who both (1) regularly extends, whether
> in connection with loans, sales of property or
> services, or otherwise, consumer credit which is
> payable by agreement in more than four
> installments or for which the payment of a finance
> charge is or may be required, and (2) is the
> person to whom the debt arising from the consumer
> credit transaction is initially payable on the
> face of the evidence of indebtedness . . . .

15 U.S.C. § 1602(f).

[18/] 15 U.S.C. § 1641 states that:

> Any civil action for a violation of this
> subchapter . . . which may be brought against a
> creditor may be maintained against any assignee of
> such creditor only if the violation for which such
> action or proceeding is brought is apparent on the
> face of the disclosure statement.

15 U.S.C. § 1641(a).  However, TILA explicitly states that loan
servicers "shall not be treated as an assignee of [a consumer]
obligation for purposes of this section unless the servicer is or
was the owner of the obligation."  Id. § 1641(f).

by recoupment or set-off." 15 U.S.C. § 1640(e).[19/]   The Ninth Circuit has clarified that this period runs "from the date of consummation" of the transaction, which generally is defined as the date on which the money is loaned to the debtor. King v. State of California, 784 F.2d 910, 913 (9th Cir. 1986).

Courts, however, may extend the period if the one-year rule would be unjust or would frustrate TILA's purpose. Id. For example, if a borrower had no reason or opportunity to discover the fraud or nondisclosures that form the basis of a borrower's TILA claim, the court may toll the statute of limitations. Id.; but see Meyer v. Ameriquest Mortg. Co., 342 F.3d 899, 902-03 (9th Cir. 2003) (refusing to toll the statute of limitations on a TILA claim because the plaintiff was in full possession of all loan documents and did not allege any concealment of loan documents or any other action that would have prevented discovery of the TILA violations); Blanco v. Am. Home Mortg. Serv., Inc., No. 09-578, 2009 WL 4674904, at *3 (E.D. Cal. Dec. 4, 2009) (same). Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it "is not generally amenable to resolution on a Rule 12(b)(6) motion." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995) (internal

---

[19/] However, when a lender violates TILA by refusing to rescind a loan, a borrower has one year from the date of a lender's refusal to rescind to file suit for damages arising from that violation. Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th Cir. 2002); see also 15 U.S.C. § 1635(g).

citation omitted).

Because Plaintiffs' Complaint asserts disclosure violations that allegedly occurred in March of 2007, Plaintiffs' claims for damages under TILA are time-barred unless the statute of limitations is equitably tolled.  In this case, it is not clear whether Plaintiffs assert that equitable tolling is appropriate.  At the hearing, after the Court inquired as to whether Plaintiffs are making an argument for equitable tolling, Plaintiffs' counsel responded "[w]e are within the three year statute."  Tr. 15:17-18.  This, of course, incorrectly refers to Plaintiffs' rescission request, which is addressed <u>supra</u>. Nevertheless, even had Plaintiffs asserted a basis for equitable tolling, it would not be appropriate to toll the statute of limitations in this instance because Plaintiffs have not come forward with any evidence as to why they did not have an opportunity to discover the fraud or nondisclosures at the time of the alleged violations.  <u>See</u> <u>Hubbard v. Fidelity Federal Bank</u>, 91 F.3d 75, 79 (9th Cir. 1996) (finding that the plaintiff was not entitled to equitable tolling because "nothing prevented [the plaintiff] from comparing the loan contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements"); <u>see also</u> <u>Abeel v. Summit Lending Solutions, Inc.</u>, No. 09-1892, 2010 WL 1445179, *3 (S.D. Cal. Apr. 9, 2010) (granting summary judgment as to the plaintiffs' statutory

damages claim under TILA because they did not "come forward with evidence to show any basis for equitable tolling").

In addition, although Plaintiffs allege that Defendants "made untrue or misleading representations," and "implemented a deceptive scheme through misleading marketing practices designed to sell risky and costly loans to homeowners," Plaintiffs have come forward with no evidence of said fraudulent conduct in opposition to Defendant RMS's Motion.  See Compl. ¶¶ 11, 15.  The lack of evidence is particularly troublesome in this context since fraud must be proven by clear and convincing evidence.  See Shoppe v. Gucci America, Inc., 94 Hawai'i 368, 369, 14 P.3d 1049, 1067 (2000); see also Cervantes v. Countrywide Home Loans, Inc., 2009 U.S. Dist. LEXIS 87997, at *13-*14 (D. Ariz. 2009) (holding that equitable tolling was not appropriate when the plaintiffs simply alleged that the defendants "fraudulently misrepresented and concealed the true facts related to the items subject to disclosure").  Accordingly, Plaintiffs' damages claims under TILA are untimely.[20]

---

[20] The Court acknowledges that when a lender violates TILA by refusing to rescind a loan, a borrower has one year from the date of a lender's refusal to rescind to file suit for damages arising from that violation.  Miquel, 309 F.3d at 1164; see also 15 U.S.C. § 1635(g).  In this case, however, the Complaint does not allege a violation of TILA for refusal to rescind, but instead requests rescission of the Note and Mortgage based on alleged violations that occurred in March of 2007.  Although in their opposition Plaintiffs assert that Defendants violated TILA by refusing to rescind the Note and Mortgage, no such allegation

(continued...)

In conclusion, the Court grants summary judgment in favor of Defendant RMS as to all of Plaintiffs' claims that allege TILA disclosure violations (primarily located in Counts II-IV), because they are untimely.[21]

---

[20] (...continued)
was made in the Complaint.  <u>See</u> Pls' Opp'n at 2.  Moreover, even had Plaintiffs properly alleged this claim, Plaintiffs would not be successful in arguing that Defendants violated TILA by refusing their May 2009 rescission requests because, at the time Plaintiffs requested rescission, their right to do so had long since expired.  In addition, as discussed <u>supra</u>, the letter addressed to Defendant Flexpoint did not request rescission of the Note and Mortgage.  As to the letter addressed to Defendant RMS, as discussed <u>infra</u>, Defendant RMS submitted a declaration stating that it never received Plaintiffs' alleged rescission request.

[21] Alternatively, although not raised by Defendant RMS in its pleadings, the Court observes that Plaintiffs' claims could be barred by the doctrine of res judicata.  <u>See</u> <u>Albano v. Norwest Fin. Hawaii, Inc.</u>, 244 F.3d 1061 (9th Cir. 2001) (applying Hawai'i law and holding that a state court foreclosure judgment may bar federal claims that "could have been litigated in the foreclosure action"); <u>Bremer v. Weeks</u>, 104 Hawai'i 43, 53, 85 P.3d 150, 160 (2004) (observing that under Hawaii law "[t]he judgment of a court of competent jurisdiction . . . precludes the relitigation . . . of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided").  In <u>Albano</u>, the Ninth Circuit explained:

> In Hawaii the doctrine [of res judicata] is applied in a robust way.  That is based upon the Hawaii Supreme Court's insistence that parties should be spared unnecessary vexation, expense, and inconsistent results; that judicial resources shall not be wasted; and that the 'legal efficacy' of final judgments shall not be undermined, but rather that final determinations 'by competent tribunals shall be accepted as undeniable legal truth.'  Thus, while everyone is given the opportunity to present a case, that is 'limited to one such opportunity.'

(continued...)

## II.        Plaintiffs' Request to Amend Count I

Count I of the Complaint seeks damages pursuant to 15 U.S.C. § 1802, et seq.  This statute, however, is inapplicable in this case as it pertains to newspaper preservation.  In their opposition, Plaintiffs explain that this was the result of a typographical error "whereby the citation of 12 U.S.C. 1802 [sic] should have been cited as 1[5] U.S.C. 1602 . . . ."[21]  As a

_____

[21]/(...continued)
Albano, 244 F.3d at 1063 (internal citations omitted); see also Ellis v. Crockett, 51 Haw. 45, 55, 451 P.2d 814, 822 (1969) ("The judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter . . . .").

At the hearing on this motion, Plaintiffs stated that they unsuccessfully asserted their TILA claims in the state court ejectment action.  Tr. 12:5:15.  Further, while Plaintiffs stated that they did not raise their UDAP claim in state court, they certainly could have raised this claim and thus the doctrine of res judicata equally applies to this claim.  Albano, 244 F.3d at 1063; Tr. 13:5-9.  Although the state court ejectment action is presently on appeal, the Court questions whether such an appeal is timely given that the writ of ejectment, summary judgment order, and entry of judgment were filed on November 12, 2009, and the notice of appeal was not filed until June 16, 2010.  See Haw. R. App. P. 4(a)(1) ("When a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order."); see also James W. Glover, Ltd. v. Fong, 42 Haw. 560 (1958) ("A judgment is final where the time to appeal has expired without appeal being taken.").  In any event, because the Court finds that Plaintiffs' federal claims are untimely or do not provide for a private right of action (as to RESPA as discussed infra, Section III), and because Plaintiffs have not come forward with any evidence to support their state law UDAP claim, the Court finds it appropriate to grant summary judgment in favor of Defendant RMS on these grounds.

[22]/ Although Plaintiffs stated in their opposition that they meant to cite to "12 U.S.C. 1602," the Court assumes this is yet another typographical error because 12 U.S.C. § 1602 is reserved
                                                          (continued...)

result of their error, Plaintiffs request leave to amend the
Complaint to correct this mistake.

Determinations as to whether to allow amendments to
pleadings are left to the discretion of the court.  See Zenith
Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971)
(citation omitted).  In exercising its discretion to grant leave
to amend, a court "'should be guided by the underlying purpose of
[Fed. R. Civ. P. 15(a)] . . . to facilitate decisions on the
merits, rather than on technicalities or pleadings.'"  In re
Morris, 363 F.3d 891, 894 (9th Cir. 2004) (internal citations
omitted).  "Futility of amendment can, by itself, justify the
denial of a motion for leave to amend."  Bonin v. Calderon, 59
F.3d 815, 845 (9th Cir. 1995).  An amendment is futile when "no
set of facts can be proved under the amendment to the pleadings
that would constitute a valid and sufficient claim or defense."
Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988)
(citations omitted).

In this case, amendment of the Complaint would be
futile because, as discussed supra, Plaintiffs' TILA claims are
time-barred.  That is, any claims for statutory damages under
TILA fall outside of the one-year statute of limitations, and
Plaintiffs' request for rescission is untimely because their

---

[22]/(...continued)
for future legislation.  15 U.S.C. § 1602, on the other hand,
refers to TILA and is applicable in this case.

27

right to rescind terminated after the non-judicial foreclosure sale was completed in October 2008.  In addition, to the extent Count I asserts a state law claim under UDAP, the Court finds that amendment would be futile for the reasons discussed infra, Section IV.

Accordingly, the Court denies Plaintiffs' request to amend Count I of the Complaint.  Further, the Court dismisses Count I for failure to state a claim upon which relief can be granted, as 15 U.S.C. § 1802 is inapplicable in this matter.[23/]

_____

[23/] It is unclear whether Plaintiffs allege an independent claim of fraud in the Complaint.  Count I asserts that Defendant Flexpoint's actions amount to a "false representation of the settlement agreements," and Plaintiffs make various references to misrepresentations throughout the Complaint.  See Compl. ¶¶ 11 ("Defendant Flexpoint made untrue or misleading representations regarding the costs of reduced or no documentation mortgage loans"); 15 ("Defendant Flexpoint implemented this deceptive scheme through misleading marketing practices . . .").  Although these allegations do sound in fraud, as discussed supra, they could be included in the Complaint to form the basis for equitable tolling, and thus do not necessarily allege an independent claim for fraud.  In fact, at the hearing on this motion Plaintiffs' counsel stated that Plaintiffs' claims are limited to TILA, RESPA, and UDAP.  Tr. 13:19-21.  Defendant RMS is correct in asserting that to the extent the Complaint does allege fraud, such a claim should be dismissed for failure to plead with particularity pursuant to Fed. R. Civ. P. 9(b) ("Rule 9(b)").  See Defendant RMS's Reply at 2-3.  "Rule 9(b) requires particularized allegations of the circumstances constituting fraud."  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547-48 (9th Cir. 1994).  Rule 9(b) mandates that the pleading provide an "account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).  In this case, Plaintiffs only make general references to alleged misrepresentations and thus do not adequately plead a claim of fraud.  Moreover, even if Plaintiffs
(continued...)

III.        **RESPA**

Although Plaintiffs only allege violations of TILA in counts II through IV of the Complaint, Plaintiffs do make brief reference to other federal lending laws elsewhere in the Complaint.  Specifically, Plaintiffs broadly assert that Defendants' actions violated various federal disclosure laws including TILA, "the Real Estate Settlement Procedures Act [RESPA], the Equal Credit Opportunity Act [ECOA], the Gramm, Leach, Bliley Act [GLB], and the Fair and Accurate Credit Transactions Act [FACTA]."  Compl. ¶ 8.

Upon reviewing the Complaint, the Court finds that Plaintiffs' Complaint can only be reasonably read to assert a violation of RESPA.  At the hearing, Plaintiffs confirmed that they were only pursuing federal claims under TILA and RESPA.  Tr. 13:19-20.

"Under RESPA and TILA, a creditor or broker must provide a good faith estimate of costs, fees, and other terms of a mortgage before the earlier of: (1) the extension of credit, or

---

[23]/(...continued)
had properly pled a claim of fraud, summary judgment would be granted in favor of Defendant RMS as to this claim.  Claims for fraud must be proven by clear and convincing evidence.  See Shoppe, 94 Hawai'i at 369, 14 P.3d at 1049.  Here, Plaintiffs have come forward with no evidence of fraud in opposition to Defendant RMS's motion for summary judgment.  In sum, the Court finds that Plaintiffs have not alleged an independent claim for fraud, but even had they done so Defendant RMS would be entitled to summary judgment.

(2) three business days after the creditor receives the consumer's written application for a residential mortgage loan." Brazier v. Security Pacific Mortgage, Inc., 245 F.Supp.2d 1136, 1141 (W.D. Wash. 2003) (citing 12 U.S.C. § 2604(c); 15 U.S.C. § 1638(b)(2); 12 C.F.R. § 226.19(a)(1)).

Although, in their Complaint, Plaintiffs do not explain how Defendants violated RESPA, in their opposition they assert that Defendants failed to provide (1) a Good Faith Estimate, (2) an Initial Application, and (3) a final signed HUD-1 Settlement Statement, all of which are required by RESPA. See Agard Decl. ¶ 4-5. However, "there [i]s no implied private civil remedy for violations of [RESPA] requiring mortgage lenders to provide borrower with good faith estimate of amount or range of charges for specific settlement services borrower is likely to incur." Collins v. FMHA-USDA, 105 F.3d 1366, 1367-38 (11th Cir. 1997); see also Palestini v. Homecomings Fin., LLC, No. 10-1049, 2010 WL 2838639, *4 (S.D. Cal. July 20, 2010) ("[T]here is no private right of action under [§§ 2603-04] for Defendants' alleged failure to provide accurate disclosures, good faith estimates, or settlement statements."). Instead, TILA provides the private right of action when a mortgage lender fails to timely provide required disclosures. Collins, 105 F.3d at 1367-38; see also Pressman v. Meridian Mort. Co., Inc., 334 F.Supp.2d 1236, 1242 n.

30

4 (D. Haw. 2004).[24/]

Accordingly, to the extent Plaintiffs' RESPA claims are based on violations of § 2603, those claims are dismissed with prejudice because RESPA provides no private right of action.[25/]

---

[24/] Several other provisions of RESPA explicitly provide private civil remedies. See, e.g., 12 U.S.C. §§ 2607(d)(2)&(5), 2608(b). These sections of RESPA, however, are not at issue in this case. To the extent Plaintiffs' RESPA claim is brought pursuant to § 2605(f) of RESPA for failure to provide Plaintiffs with a transfer of servicing disclosure, Defendant RMS is entitled to summary judgment as to this claim. For reasons more fully discussed infra, Defendant RMS is entitled to summary judgment because Plaintiffs have not come forward with any evidence, such as declarations from Plaintiffs, establishing that Defendant RMS violated this provision of RESPA, and also because Plaintiffs have not come forward with evidence of actual damages, which is required at this stage of the proceedings. See Agustin v. PNC Fin. Serv. Group, Inc., No. 09-00423, 2010 WL 1507975, *9 (D. Haw. Apr. 15, 2010) ("Of course, if Plaintiffs are unable to show, in a summary judgment proceeding, actual damages resulting from the RESPA violations, they may find their RESPA claim at an end.").

[25/] RESPA also requires a mortgage servicer to provide a written response acknowledging the receipt of a borrower's written request within 20 days and to take specified actions within 60 days. See 12 U.S.C. § 2605(e). In their opposition, Plaintiffs assert that Defendants violated this section of RESPA by failing to respond to their rescission requests. See Pls' Opp'n at 2. The Complaint, however, makes no such claim. Although the Complaint was accompanied by a letter dated May 26, 2009 addressed to Defendant Flexpoint, nowhere in this letter do Plaintiffs request rescission of the Note and Mortgage. Further, nowhere in the Complaint do Plaintiffs allege a violation of RESPA for failure to respond to qualified written requests. Indeed, Plaintiffs do not even allege in the Complaint that qualified written requests were even sent to Defendants. Accordingly, the Court finds that the Complaint does not allege a violation of this section of RESPA.

Further, even if the Court were to find that Plaintiffs have adequately pled a claim under 12 U.S.C. § 2605(e), summary judgment would be granted in favor of Defendant RMS for at least

(continued...)

Further, to the extent Plaintiffs' RESPA claims are more properly stated as TILA disclosure violations, they fail for the reasons stated <u>supra</u>. Accordingly, the Court grants summary judgment in favor of Defendant RMS as to Plaintiffs' claims alleging violations of RESPA.

**IV.      State Law UDAP Claims**

In Count V of the Complaint, Plaintiffs assert that Defendants "engagements in deceptive acts and practices and unfair methods of competition in the conduct of trade and/or commerce are actionable under Sec 480-2, 480-13 [of the Haw. Rev.

---

[25]/(...continued)
two reasons.  First, Defendant RMS has submitted a declaration stating that it never received a letter from Plaintiffs requesting rescission of the Note and Mortgage.  <u>See</u> Defendant RMS's Supp. Br. at 19 (citing the declaration of David Sklar). In contrast, Plaintiffs have not submitted any declaration establishing that they sent the letter to Defendant RMS.  Because Defendant RMS never received the letter, it could not have violated 12 U.S.C. § 2605(e).  Second, Defendant RMS would be entitled to summary judgment because Plaintiffs have not shown evidence of actual damages.  Excluding instances involving a "pattern or practice of non-compliance," "for each failure" of a defendant to comply with § 2605, an individual plaintiff is entitled to "any actual damages . . . as a result of the [defendant's] failure."  12 U.S.C. § 2605(f)(1).  In this case, although Plaintiffs have pled actual damages, they have come forward with no evidence as to how they were harmed by Defendant RMS's alleged failure to respond to the rescission request within twenty days.  In fact, the Court does not see how Plaintiffs could have been harmed at all given that Plaintiffs' alleged rescission requests were made nearly eight months (8) after the Property was foreclosed upon, thereby terminating their right to rescind.  Accordingly, Plaintiffs have not adequately pled a claim under 12 U.S.C. § 2605(e).  Further, the Court declines to grant Plaintiffs leave to amend their Complaint to assert a claim under § 2605(e) because amendment would be futile.

Stat.]." Compl. ¶ 38.

The Hawai'i Unfair and Deceptive Trade Practices Act § 480-13 states that "any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by [H.R.S. ch. 480] . . . [m]ay sue for damages sustained by the person," including treble damages, and "[m]ay bring proceedings to enjoin the unlawful practices." H.R.S. §§ 480-13(a)(1),(2).[26/] There are "three elements essential to recovery under H.R.S. § 480-13: (1) a violation of H.R.S. chapter 480; (2) injury to the plaintiff's business or property resulting from such violation; and (3) proof of the amount of damages." Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, 113 Hawai'i 77, 114, 148 P.3d 1179, 1216 (2006) (footnote omitted).

H.R.S. § 480-2 provides, in relevant part, that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." H.R.S. § 480-2(a). In interpreting H.R.S. § 480-2, Hawai'i courts have held that "[a] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Rosa v. Johnston, 3 Haw. App. 420, 427, 651 P.2d

---

[26/] Apart from affording damages and injunctive relief, H.R.S. ch. 480 also declares that "[a]ny contract or agreement in violation of [H.R.S. ch. 480] is void and is not enforceable at law or in equity." H.R.S. § 480-12.

1228 (1982).  A deceptive practice is defined as "an act causing, as a natural and probable result, a person to do that which he would not otherwise do."  <u>Eastern Star, Inc. v. Union Bldg. Materials Corp.</u>, 6 Haw. App. 125, 133, 712 P.2d 1148 (1985).  "However, . . . actual deception need not be shown; the capacity to deceive is sufficient."  <u>Id.</u>

     In its supplemental briefing, Defendant RMS asserts that summary judgment should be granted in its favor with respect to the UDAP claim because Plaintiffs "have not submitted any admissible evidence demonstrating that they were victims of any unfair or deceptive trade practices."  Defendant RMS's Supp. Br. at 12 (citing <u>Citicorp Mortgage, Inc. v. Bartolome</u>, 94 Hawai'i 422, 435, 16 P.3d 827, 840 (App. 2000)).[27/]  In other words, while the allegations in the Complaint might amount to "immoral, unethical, oppressive, unscrupulous or substantially injurious" conduct, <u>Rosa</u>, 3 Haw. App. at 427, Plaintiffs cannot simply rest on their allegations at this stage of the proceedings.  To defeat

---

     [27/] Alternatively, Defendant RMS argues that, absent a writing signed by Defendant RMS that it assumed the liabilities of other parties, it cannot be held liable for the alleged UDAP violations because it is not responsible for the alleged conduct of other parties.  Pl's Supp. Br. at 12-13 (citing H.R.S. § 656-1).  Although this argument has some merit, the Court recognizes that H.R.S. ch. 480 declares that "[a]ny contract or agreement in violation of [H.R.S. ch. 480] is void and is not enforceable at law or in equity."  H.R.S. § 480-12; <u>see also</u> Pls' Supp. Br. at 7-8.  However, because Plaintiffs have come forward with no evidence in support of their UDAP claim, the Court need not address this issue.

summary judgment, a nonmoving party must set forth "significant probative evidence" in support of its position.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.  The Court agrees with Defendant RMS that Plaintiffs have come forward with no admissible evidence to support their UDAP claim.

The only evidence Plaintiffs have come forward with in opposition to summary judgment is the rescission request which was allegedly sent to Defendant RMS, the Loan Audit Report along with the declaration of the auditor that prepared this report, and a declaration from Plaintiffs' counsel.  The letter sent to Defendant RMS is not admissible as evidence because Plaintiffs did not submit declarations stating that they sent the letter to Defendant RMS, nor have they sworn as to the accuracy of the statements made in the letter, and because the statements made in the letter regarding the alleged disclosure violations constitute hearsay and do not meet any of the exceptions to hearsay (the letter was written and signed by Plaintiffs, although peculiarly the letter does at one point state "I am requesting that [Defendant Flexpoint] work with me to negotiate a loan modification that <u>my client</u> will be able to pay.").  Moreover, although Plaintiffs' counsel submitted a declaration stating that he reviewed the documents <u>submitted to him by Plaintiffs</u>, his declaration cannot serve as evidence regarding Plaintiffs' UDAP claim because he does not know whether he reviewed all of the

documents Plaintiffs received, he has no personal knowledge of the transaction that occurred in March 2007, and it would be inappropriate for the attorney to testify on behalf of his clients in this instance.  See Boyd v. City of Oakland, 458 F.Supp.2d 1015, 1024 (N.D. Cal. 2006) ("Paragraph one is inadmissible because it is merely Plaintiff's counsel's assertion of personal knowledge and competency to testify, which are insufficient to render the declaration admissible."); see also Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412 (9th Cir. 1995) (declarations on information and belief are entitled to no weight where declarant lacks personal knowledge); Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp., Inc, et al., 546 F.2d 530, 538 (3d Cir. 1976) ("Ordinarily it is inappropriate for an attorney, or a lawyer in his firm, to testify on behalf of a client.").

What remains is the Loan Audit Report, which is inadmissible for a number a reasons.[28]  Because the Loan Audit Report constitutes hearsay, and at times hearsay within hearsay, it is only admissible if it meets an exception to the hearsay requirements, or if the report is used as a basis of an expert's testimony.  See Paddack v. Dave Christensen, Inc., 745 F.2d 1254,

---

[28] Although the Loan Audit Report was originally not sworn to or verified by its author as true and correct, in their supplemental briefing Plaintiffs submitted a sworn declaration from August Blass, who prepared the Loan Audit Report, verifying that the Loan Audit Report is true and correct ("Blass Decl.").

1257-58 (9th Cir. 1984).

In this case, none of the hearsay exceptions apply. The most likely exception would be the business records exception to the hearsay rule.  <u>See</u> Fed. R. Evid. 803(6) ("Rule 803(6)"). Under Rule 803(6), for a memorandum or record to be admissible as a business record, it must be "(1) made by a regularly conducted business activity, (2) kept in the 'regular course' of that business, (3) 'the regular practice of that business to make the memorandum,' (4) and made by a person with knowledge or from information transmitted by a person with knowledge."  <u>Clark v. City of Los Angeles</u>, 650 F.2d 1033, 1036-37 (9th Cir. 1981). "[A] document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness."  <u>Id.</u> at 1037.  In this case, Mr. Blass did not have personal knowledge of the transaction between Plaintiffs and Defendants which occurred in March 2007.  More importantly, there is nothing to suggest that the Loan Audit Report was prepared in the regular course of business.  Instead, this report appears to have been prepared for the purpose of litigation, and thus is not admissible under Rule 803(6).

Similarly, the Loan Audit Report is not admissible as a basis of an expert's testimony.  At a preliminary matter, Mr. Blass was not disclosed as an expert by Plaintiffs, and the deadline to do so has long since past.  <u>See</u> Docket No. 14 (the

Rule 16 Scheduling Order required Plaintiffs to disclose any experts by April 5, 2010); see also Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").  Indeed, trial is scheduled to begin in this matter in nearly two months.  Id. (setting a trial date of October 5, 2010).  Even had Mr. Blass been disclosed as an expert, however, the Loan Audit Report would still be inadmissible for several other reasons.

The district court has been tasked with the gate keeping function to determine the admissibility of an expert witness' testimony.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (stating that the trial judge must ensure that all scientific testimony is both relevant and reliable).  An expert's testimony "is, therefore, subject to the Daubert-Kumho criteria.  The testimony must be both reliable and relevant." Sullivan v. U.S. Dep't of Navy, 365 F.3d 827, 833 (9th Cir. 2004).

Here, there are a number of problems with the Loan Audit Report suggesting that it is neither reliable nor relevant. The most glaring of these flaws is that the Loan Audit Report

does not describe the loan documents which were reviewed or relied on in preparing the report.  The Loan Audit Report states that the "Scope of this audit report was limited to a determination of accuracy and compliance of the loan documentation included in the file submitted for audit."  Loan Audit Report at 3.  However, the Loan Audit Report does not list or describe in any reasonable detail the documents relied on by the author of the report, nor does Mr. Blass' declaration indicate that he has personal knowledge that he reviewed all of the documents received by Plaintiffs.  As aptly stated by Defendant RMS, the Loan Audit Report's accuracy "depends on the content and substance of the documents reviewed; however, the reliability of the Loan Audit Report's conclusions cannot be determined, because the documents relied on by the Loan Audit Report cannot be adduced."  Defendant RMS's Supp. Br. at 25. This flaw becomes more glaring when coupled with the fact that there is no evidence that Plaintiffs did not receive other loan documents that were not reviewed by Mr. Blass in preparing the Loan Audit Report.

Additionally, other problems with the Loan Audit Report include, but are not limited to, the fact that: (1) the Loan Audit Report states conclusions without reference to specific facts supporting the conclusions; (2) neither the Loan Audit Report nor the declaration of Mr. Blass demonstrate that he is an

expert (in his declaration, Mr. Blass states that he is qualified as an expert but does not support this assertion); and (3) the Loan Audit Report contains conclusions of law, which are not a proper subject of expert testimony in this instance.

In conclusion, Plaintiffs have not come forward with <u>any</u> admissible evidence to support their UDAP claim, and Defendant RMS is entitled to summary judgment as to this claim.

**V.        Count VI - Request for Injunctive Relief**

In Count VI of the Complaint, Plaintiffs assert that they "have been and will be seriously injured unless Defendant RMS's non judicial foreclosure sale and/or subsequent ejectment actions and other activities are preliminarily and permanently enjoined." Compl. ¶ 44. As such, Plaintiffs "seek an injunction to enjoin Defendant RMS from evicting Plaintiffs from their home, and to vacate any non judicial foreclosure sale of the subject property and to vacate any further actions taken to eject Plaintiffs from their home." <u>Id.</u> ¶ 45. At the hearing on this motion, Plaintiffs withdrew their request for injunctive relief as moot. Tr. 18:5-7. Accordingly, the Court dismisses this count of the Complaint.

<u>CONCLUSION</u>

In conclusion, Count I of the Complaint is dismissed for failure to state a claim upon which relief can be granted. As to the remaining claims, the Court has dismissed or granted

40

summary judgment in favor of Defendant RMS.  Because the liability of all of the Defendants in relation to the March 2007 loan transaction is nearly identical, the Court finds it appropriate to grant summary judgment in favor of each Defendant as to all of Plaintiffs' claims.  <u>See</u> Tr. 17:5-8 (Plaintiffs' counsel asserted that "the whole focus has been on the original creditor, and whatever claims [they] may have against [Defendant Flexpoint are] being asserted against Defendant RMS . . .").  This includes the newly joined Defendants Fidelity and Dana Capital.  As a consequence, Defendant RMS's crossclaim against Defendant Flexpoint is dismissed as moot.  The Clerk of the Court is directed to enter judgment in favor of all the Defendants as to all claims and to close this case.

IT IS SO ORDERED.

Dated: Honolulu, Hawai'i, July 30, 2010.



Alan C. Kay
Sr. United States District Judge

<u>Valdez v. Flexpoint Funding Corp. (Irvine), et al.</u>, Civ. No. 09-00296 ACK-BMK: Order Granting Defendant RMS's Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment